**ACTION AIR FREIGHT, INC. and Neil Lonsinger, Plaintiffs,**

v.

**PILOT AIR FREIGHT CORP., Defendant.**

**Civ. A. No. 91-2165.**

United States District Court, E.D. Pennsylvania.

July 17, 1991.

Arthur L. Pressman, Abraham, Pressman & Bauer, P.C., Philadelphia, Pa., for plaintiffs.

Patrick C. Campbell, Jr., Law Offices of Richard G. Phillips Associates, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Plaintiff, Action Air Freight, Inc. ("Action Air"), filed a complaint alleging violations of Pennsylvania's Rules of Professional Conduct by counsel for defendant, Pilot Air Freight Corp. ("Pilot Air"). Action Air seeks injunctive relief pending an arbitration proceeding between the parties. Presently before this court is defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Pilot Air asserts that this court lacks subject matter jurisdiction and that plaintiff's complaint fails to state a claim. For the reasons which follow, defendant's motion is granted.

### FACTS

Action Air has its principal place of business in California. Pilot Air has its principal business in Pennsylvania. The parties entered into a Franchise Agreement on January 4, 1991. This agreement contained the following clause:

> All disputes and claims relating to this Franchise Agreement, the rights and obligations of the parties hereto, or any others claims or causes of action relating to the performance of either party, and/or the purchase of the franchise by Franchisee, shall be settled by arbitration in accordance with the Federal Arbitration Act and the Rules of the American Arbitration Association pursuant to the Commercial Arbitration Rules of the American Arbitration Association.

After Pilot Air sought to terminate this agreement, the parties submitted the dispute to the American Arbitration Association for resolution. The amount in controversy in the arbitration exceeds $50,000. On the eve of arbitration, Action Air filed this complaint, seeking to enjoin defense counsel's alleged *ex parte* contacts with its former employees. In its complaint, Action Air alleged that counsel for Pilot Air, a member of the California bar, communicated *ex parte* with former managerial employees of Action Air who are now the employees of Pilot Air. Counsel also allegedly contacted other former employees whose acts defendant may attempt to impute to Action Air. Subsequently, Pilot Air filed the instant motion to dismiss.

### DISCUSSION

#### I.

■ The first question presented is whether this court possesses independent subject matter jurisdiction and if so, whether it is appropriate to exercise that jurisdiction as it relates to a controversy arising out of arbitration proceedings. The existence of an arbitration proceeding does not divest the court of its subject matter jurisdiction. In order to hear disputes related to arbitration proceedings, however, independent subject matter jurisdiction is required and must be available "through diversity of citizenship or some other independent basis for federal jurisdiction." *Pennsylvania Engineering Corp. v. Islip*

*Resource Recovery Agency,* 710 F.Supp. 456, 460 (E.D.N.Y.1989).

Action Air asserts diversity jurisdiction under Title 28 U.S.C. § 1332. Action Air is a California corporation having its principal place of business in Mission Viejo, California. Pilot Air is a Pennsylvania corporation having its principal place of business in Lima, Pennsylvania. The statutory minimum amount in controversy is satisfied as it has been alleged to exceed $50,000.

■ Once independent subject matter jurisdiction has been established, this court must decide if it is appropriate to entertain a motion for preliminary injunctive relief in a controversy which arises out of a dispute that the parties agree is arbitrable. *Ortho Pharmaceutical Corp. v. Amgen Inc.,* 882 F.2d 806, 811 (3d Cir.1989). The Arbitration Agreement between the parties is subject to the Federal Arbitration Act, 9 U.S.C. § 3, which "does not deprive the district court of the authority to grant interim relief in an arbitrable dispute, provided the court properly exercises its discretion in issuing the relief." *Ortho Pharmaceutical,* 882 F.2d at ·811. In fact, "§ 3 states only that the court shall stay the 'trial of the action'; it does not mention preliminary injunctions or other pre-trial proceedings." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,* 756 F.2d 1048, 1052 (4th Cir.1985); *Ortho Pharmaceutical,* 882 F.2d at 812. Disputes related to pre-trial or injunctive proceedings are not issues referable to arbitration under § 3. Furthermore, "nothing in the statute's legislative history suggests that the word 'trial' should be given meaning other than its common and ordinary usage." *Ortho Pharmaceutical,* 882 F.2d at 812. The Court of Appeals for the Third Circuit noted in *Ortho* that the Court of Appeals for the 1st, 2nd, 4th, 7th and 9th Circuits have all determined that a district court has authority to grant interim relief in an otherwise arbitrable dispute to avoid compromising the integrity of the arbitration procedure. *Ortho Pharmaceutical,* 882 F.2d at 811.

The Congressional policy contained in the Federal Arbitration Act "reflects a legislative determination of the desirability of arbitration as an alternative to litigation." *Sharon Steel Corp. v. Jewell Coal and Coke Co.,* 735 F.2d 775, 778 (3d Cir.1984). That same policy, however, is the basis for mandatory judicial intervention to preserve the sanctity of arbitration proceedings. *Ortho Pharmaceutical,* 882 F.2d at 812. In summarizing the rationale for the majority rule, the Court of Appeals for the First Circuit held that

> the congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration and, *ipso facto,* the meaningfulness of the arbitration process.

*Ortho Pharmaceutical,* 882 F.2d at 812, *citing Teradyne, Inc. v. Mostek Corp.,* 797 F.2d 43, 51 (1st Cir.1986).

Pilot Air cites *Local 145, International Ladies Garment Workers' Union, AFL–CIO v. Fashion Associates, Inc.,* 596 F.Supp. 77, 84–85 (D.N.J.1984), in support of its position that the arbitrator has the authority to disqualify counsel and, thus, this court should not exercise jurisdiction. We find that argument to be completely lacking in merit. First, in *Local 145,* defendant argued that the court neither explicitly or impliedly stated that an arbitrator has the authority to disqualify counsel. Second, it is this court's responsibility to focus on the preservation of the integrity of the arbitration process.

■ In the case *sub judice,* Action Air does not ask the court to interfere with the authority of the arbitrator. The arbitrator's powers are created under the American Arbitration Commercial Arbitration Rules, which were chosen by the parties. These Rules contain no provision for addressing the professional conduct of lawyers. Thus, we cannot say that the maintenance of this action will impugn the authority of the arbitrator. Accordingly, we find that this court has subject matter jurisdiction to review Action Air's complaint.

## II.

■ Next, we address the issue of whether Action Air failed to state a claim for which relief can be granted. A Rule 12(b) motion tests the legal sufficiency of a complaint. If the facts pled and reasonable inferences therefrom legally suffice to support the relief requested, the court must deny a motion to dismiss. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173 (3rd Cir.1988). When reviewing motions to dismiss, district courts must assume that all allegations in the complaint are true and examine them in a light most favorable to the non-moving party. *Sturm v. Clark*, 835 F.2d 1009, 1011 (3rd Cir. 1987).

■ Pilot Air first argues that the ethical guidelines of California, not Pennsylvania, guide its counsel's conduct. Because Action Air's complaint alleges only ethics code violations of Pennsylvania, it fails to state a claim. Pilot Air bases this argument on the fact that defense counsel is a member of the California bar. Since counsel does not have a license to practice in Pennsylvania, Pilot Air concludes that this state's professional code cannot bind his behavior.

California, however, recognizes that rules of conduct, observed by outside jurisdictions, may supplement its own rules. *Ca. Rules of Professional Conduct*, Rule 1–100 provides:

> [The California rules] shall govern the activities of members in and outside this state, *except as members practicing outside this state may be specifically required by a jurisdiction to follow rules of professional conduct different from these rules.*

(emphasis added)

While defense counsel may not try cases before Pennsylvania Courts unless admitted *pro hac vice*, he represents a client from Pennsylvania in an arbitration proceeding to be held in Pennsylvania. Under these circumstances, we find that defense counsel practices in Pennsylvania within the meaning of Rule 1–100. Accordingly, Pennsylvania's professional code governs counsel's conduct.

■ Pilot Air next argues that Rule 4.2 of Pennsylvania Rules of Professional Conduct does not prohibit *ex parte* contacts with former employees under any circumstances. Rule 4.2 states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Pa.Rules of Professional Conduct, Rule 4.2.[1] The question arises as to whether the former employees of a corporation qualify as a represented 'party' under Rule 4.2.

The official comment to Rule 4.2 assists the inquiry. It provides in pertinent part:

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

Pa.Rules of Professional Conduct, Rule 4.2 (Comment). The comment defines three categories of people that qualify as a represented 'party' of a corporation: 1) persons with managerial responsibilities; 2) persons whose acts may be imputed to the corporation; and 3) persons whose statements constitute an admission by the corporation.

Neither the text of Rule 4.2 or the official comment contains any *explicit* reference to former employees. Thus, one of the three categories of a represented party must *implicitly* include former employees for Rule 4.2 to prohibit *ex parte* contacts by opposing counsel. Because former managerial employees lack an existing agency relationship with the corporation,

---

**1.** On April 1, 1988, the Supreme Court of Pennsylvania adopted the Rules of Professional Conduct, a revised version of model rules promulgated by the American Bar Association.

they cannot bind the corporation. *See Anderson v. United States,* 417 U.S. 211, 218–219, n. 6, 94 S.Ct. 2253, 2260, n. 6, 41 L.Ed.2d 20 (1974); *Hanntz v. Shiley, Inc.,* 766 F.Supp. 258, 268 (D.N.J.1991). For the same reason, a statement by a former employee may not be introduced as an admission of the corporation. *See* 2 G. Hazard & W. Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct 734 (2nd ed. 1990); Fed. R.Evid. 801(d)(2)(D) ("a statement is [an admission if it is] ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment.") The first and third categories of represented parties, therefore, indicated in the comment, cannot be interpreted to include former employees. As a result, the outcome of this case turns on whether the second category of a Rule 4.2, i.e. persons whose acts may be imputed to the corporation, applies to former employees.

Courts have struggled with this issue. While the only decision from this district provides that Rule 4.2 does not prohibit contacts with former employees, *University of Patents, Inc. v. Kligman,* 737 F.Supp. 325, 329 (E.D.Pa.1990), the decisions of other jurisdictions are not consistent. *Compare Hanntz v. Shiley, Inc.,* 766 F.Supp. 258 (D.N.J.1991) (Rule 4.2 permits counsel to conduct *ex parte* contacts with any former employee of a corporate adversary) *and Curley v. Cumberland Farms,* 134 F.R.D. 77 (D.N.J.1990) (counsel may make *ex parte* contacts with former managerial employees provided counsel avoids inquiries into information imputable to corp.) *with Public Service Electric and Gas Co. v. Associated Electric & Gas Insurance Service,* 745 F.Supp. 1037 (D.N.J.1990) (Rule 4.2 prohibits *any* ex parte contacts with insured's former employees.) This same split occurs between jurisdictions. *Compare, e.g., Dubois v. Gradco Systems,* 136 F.R.D. 341 (D.Conn.1991) (opposing counsel may make *ex parte* contacts with adversary corporation's former employees but must forgo inquiry into privileged information) *with Sperber v. Washington Heights–West Harlem–Inwood Mental Health Counsel,* No. 82 Civ. 7428 (CBM) (S.D.N.Y. Nov. 21, 1983), *vacated and withdrawn,* (December 13, 1983) ([the phrase 'any other person'] "... is plainly broad enough to cover [and, therefore bar *ex parte* contacts with] ... former employees"); *Porter v. Arco Metals Co.,* 642 F.Supp. 1116 (D.Mont.1986) (Rule 4.2 bars *ex parte* contacts with former managerial employees). The most recent case, *Hanntz v. Shiley, Inc.,* 766 F.Supp. 258 (D.N.J.1991), conducted a thorough examination of the relevant authorities, and the purpose and policies underlying Rule 4.2. In *Hanntz,* Judge Lechner of the District of New Jersey found that Rule 4.2 does not generally bar *ex parte* contacts with former employees. Rather the rule permits *ex parte* contacts but proscribes inquiry by opposing counsel into matters subject to the attorney-client privilege. The qualification on the 'contact rule' allows opposing counsel to investigate the underlying facts leading up to the disputed matter. At the same time, counsel must forgo inquiry into attorney-client communications during the contact. Accordingly, *Hanntz* interprets Rule 4.2 to proscribe the type of questioning of former employees, not the contact itself. *See Hanntz, supra* at 265–269.

The *Hanntz* court indicated three primary reasons for its decision. We find these reasons persuasive. First, Rule 4.2's underlying policies do not justify the wholesale exclusion of former employees from the discovery process. *Id.* While Rule 4.2 preserves the posture of the adversarial system and the attorney-client relationship it should not necessarily chill the flow of harmful information. *Id.; see also Curley v. Cumberland Farms,* 134 F.R.D. 77, 83 (D.N.J.1991). "The interest in preventing inadvertent disclosure of privileged material does not justify a blanket ban on communication with the opposing party's former employees." *Polycast Technology Corp. v. Uniroyal,* 129 F.R.D. 621, 627–28 (S.D.N.Y.1990).

Second, the Standing Committee of the American Bar Association probably intended the phrase "any other person" in the official comment to apply to other current agents and servants of the employer. The

comment's drafting history bears out this more restrictive interpretation. Preliminary drafts limited the scope of a Rule 4.2 'party' to managerial employees. The ABA, however, later expanded the definition to include lower level employees and agents involved in the transaction at issue. *Hanntz, supra,* at 264; *Polycast,* 129 F.R.D. at 627.

Third, the commentary's language reads most consistently if the phrase "any other person whose act ... may be imputed to the corporation" imputes liability based on the agency principle. The two other tests for a represented party discussed in the comments—persons whose managerial responsibilities or admissions bind the corporation—rely on this principle. Because former employees do not qualify as agents of the corporation, they do not fall within the comment's imputation language. *Hanntz, supra,* at 264–265.

Finally, we note that Action Air's former employees subjected to the contacts presently work for Pilot Air. In this case, prohibiting opposing counsel from communicating with these people would interfere with the representation of counsel's own client. We cannot permit Action Air's interests to circumscribe the attorney/client relationship of its opponent.

For all the foregoing reasons, we adopt a narrower version of the *Hanntz* interpretation of Rule 4.2. We find that Rule 4.2 permits defense counsel to make *ex parte* contacts with the former employees currently working for Pilot Air. Opposing counsel may inquire into the underlying facts giving rise to the dispute but must refrain from soliciting information protected by the attorney-client relationship. Having determined the applicable law, we now turn to defendant's motion to dismiss.

In its complaint, Action Air alleges that Pilot Air's counsel violated PA's Rule 4.2 by conducting *ex parte* contacts with former managerial employees and non-managerial employees whose acts defendant will impute to Action Air. As indicated above, however, Rule 4.2 merely proscribes the type of questioning permitted during unrepresented contacts with this class of wit-

ness, not the contact itself. Action Air failed to allege that any of these former employees disclosed privileged information. Even if we assume the allegations are true, Action Air's complaint fails to allege sufficient facts to support a claim for injunctive relief. Accordingly, we grant defendant's motion to dismiss the case. However, in the event that the plaintiff is capable to alleging that these contacts divulged privileged information, we will allow the plaintiff to amend and refile its complaint.