Tommie L. **TOLIVER,** Plaintiff,

v.

**SULLIVAN DIAGNOSTIC TREATMENT CENTER (SDTC),** Defendant.

No. 89 Civ. 8076 (VLB).

United States District Court, S.D. New York.

Feb. 1, 1993.

See also 748 F.Supp. 223.

Tommie L. Toliver, pro se.

Glen Rickles, Croton-on-Hudson, NY, for defendant.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

Tommie L. Toliver ("Toliver") has sued the Sullivan Diagnostic Treatment Center ("SDTC") under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000–e, on grounds of discriminatory dismissal of Toliver and failure to hire him as a counselling supervisor because of race. He earlier sought relief from the New York State Division of Human Rights and the federal Equal Employment Opportunity Commission but received adverse determinations from the state agency on August 30, 1988 and the EEOC on August 12, 1989, as well as on an earlier complaint to the State Division filed December 1, 1987.

After completion of discovery conducted by both parties, SDTC has moved for summary judgment dismissing the complaint. For the reasons which follow, I grant the motion. I direct, however, that entry of judgment be stayed for 45 days to permit Toliver (who is representing himself), to move for reconsideration if there are grounds for doing so, and I make certain further directions to SDTC counsel as set forth in note 1 to part IV below.

### II

■ The background facts are undisputed. Toliver, who is black, was employed as a night residential counsellor. Some time in early 1987, he applied for a position as Program Supervisor, but that job was filled by a white applicant with prior supervisory and administrative experience with the same client population.

For a time beginning in April 1987 Toliver was permitted to leave work early two days a week to hold down another job. On May 18, 1987 he was told, however, that it would be necessary for him to work full time to continue with SDTC. Toliver asked to be permitted to use sick leave time to compensate for leaving early, but this request was denied.

Toliver called in sick on May 24, May 31, June 4, and June 7, 1987. Between June 8 and 13, discussions occurred between Toliver and his supervisor at SDTC, involving among other things a demand by the supervisor for doctor's notes with respect to Toliver's past and future illnesses. Toliver called in sick on June 14 and did not furnish a doctor's note. Toliver's affidavit in connection with the present motion does not specify the nature of any illnesses involved on any of the occasions mentioned, nor does it offer any corroboration of his sicknesses.

Toliver was terminated on June 15, 1987 and later applied for another supervisory position for which he was not selected.

Toliver points to a chart secured through discovery, labelled as Exhibit 34, showing 24 hirings including one other Black, one Hispanic and one Asian counsellor during the period from 1984 to October 1989 as indicating a pattern of discrimination. No information about the ethnic mix of the community in which SDTC operates or of its applicants has been provided. The New York State Division of Human Rights decision in connection with Toliver's initial December 1, 1987 complaint found no unlawful discriminatory practice:

"A review of the staffing pattern did not reveal a pattern of discrimination based on race and color."

### III

SDTC has established reasonable nondiscriminatory grounds for selecting a supervisor other than Toliver at the time of his initial application for such a position, for dismissing Toliver and, since his conduct was unsatisfactory during his initial period of employment, for not subsequently selecting him as a supervisor.

Toliver, although representing himself, has conducted discovery, filed carefully drawn papers, and contradicted SDTC's version of some of his conversations with his supervisors. He has failed to point to any specific indication of discriminatory behavior, or to justify his absences by showing any indication of actual illnesses. Given the circumstances, Tolliver's submissions do not contradict or undermine the existence of nondiscriminatory reasons for each of SDTC's challenged actions. See *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

### IV

The small number of minority members hired for the SDTC staff may or may not reflect the ethnic mix of the relevant applicant pool or of the area involved; without such information, an inference of discrimination cannot be drawn. See *Hazelwood School District v. United States*, 433 U.S. 299, 303, 97 S.Ct. 2736, 2739, 53 L.Ed.2d 768 (1977). Moreover, the size of the group involved is so small that statistical inferences are difficult or impossible. See *Ochoa v. Monsanto Co.*, 473 F.2d 318, 319–20 (5th Cir.1973) (group of 56 insufficient under circumstances); see also *Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605, 621, 94 S.Ct. 1323, 1333, 39 L.Ed.2d 630 (1974) (group of 13).

One of the purposes of private suits under Title VII is to permit a private attorney general role to be played with respect to potential patterns or practices of discrimination. This objective was fulfilled at least to some extent here when Toliver was able to bring before neutral administrative agencies the statistics involved. Neither agency found a violation.

Although not controlling, the conclusions of the state agency concerning the staffing pattern of SDTC after hearing from both sides tend to corroborate that the numeri-

cal information provided is not sufficient to support an inference of discrimination: no genuine issue of material fact has been established with respect to discrimination against Toliver.

Toliver, however, cannot be faulted for presenting an argument based on Exhibit 34.[1] I decline to impose sanctions against Toliver, and deny SDTC's motion for an award of attorney's fees to be paid by Toliver.

SO ORDERED.

---

**1.** I direct that counsel for SDTC furnish a copy of this memorandum order to the chief executive of SDTC, for consideration by that entity as to whether or not its counselling and supervisory mix adequately reflects the geographic and client mixes, and if not, whether greater out-reach for qualified applicants might be useful. Such consideration, which I recommend but do not require, *Friarton Estates Corp. v. City of New York*, 681 F.2d 150, 160 (2d Cir.1982), would further the objectives of 42 U.S.C. § 2000–e and similar state laws.