**Tommie L. TOLIVER, Plaintiff,**

v.

**SULLIVAN DIAGNOSTIC TREATMENT CENTER (SDTC), Defendant.**

No. 89 Civ. 8076 (VLB).

United States District Court,
S.D. New York.

April 14, 1993.

Tommie L. Toliver, pro se.

Glen Rickles, Croton-on-Hudson, NY, for defendant.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

Tommie L. Toliver ("Toliver") brought a *pro se* suit against the Sullivan Diagnostic Treatment Center ("SDTC") under Title VII of the Civil Rights Act of 1964 as amended, 42 USC § 2000–e, on grounds of discriminatory dismissal and failure to hire him as a counselling supervisor because of race. Toliver sought relief from the New York State Division of Human Rights and the federal Equal Employment Opportuntiy Commission but received adverse determinations from the state agency on August 30, 1988 and the EEOC on August 12, 1989, as well as on an earlier complaint to the State Division filed December 1, 1987.

I granted summary judgment for defendant on February 1, 1993, 812 F.Supp. 411 but allowed Toliver 45 days to move for reconsideration. I grant the application for reconsideration but adhere to the original decision for the reasons set forth in the memorandum order of February 1, 1993 and the additional reasons which follow.

### II

Toliver claims that discovery granted him by United States Magistrate Judge Mark D. Fox was not provided, but attaches no papers indicating that he had ever sought to compel compliance. Moreover, there is no indication of what the discovery assertedly not provided would show which would have affected the proper resolution of defendant's motion. See *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp,* 769 F.2d 919 (2d Cir.1985).

Toliver asserts that he sought to depose representatives of defendant but that no names were provided. An institutional wit-

ness, however, would be less significant than officials of defendant whose names are mentioned frequently in Toliver's papers and are obviously known to him. There is no claim here or in any papers filed suggesting that depositions of such persons were sought and denied, or scheduled but not taken.

Toliver further complains that defense counsel coached witnesses during depositions, but does not appear to have contacted the Magistrate Judge for relief. Moreover, Toliver does not set forth any particular answers of the witnesses which he contends should be discounted or the opposite of the answer deemed the truth.[1]

Toliver states that on more than one occasion witnesses were told not to answer, but does not appear to have sought relief from the Magistrate Judge to obtain the answers if relevant. Toliver also fails to set forth the nature of the unanswered questions or what the answers might have shown.

If a party—even one appearing *pro se*—could successfully permit discovery to be completed without seeking relief at the time, but effectively complain of deficiencies in the discovery process for the first time in seeking reconsideration of a grant of summary judgment to the adversary, litigation could hardly ever be concluded.

### III

■ Toliver complains that the Magistrate Judge had told him not to talk with employees of the defendant outside the deposition room, but never appealed to me from any such ruling at the time. Moreover, he does not show that he could not ask during the deposition any questions he would have asked at some other time. Such an instruction if given by Magistrate Judge Fox might serve a mutually beneficial objective in avoiding potential confrontations between plaintiff and employees of the defendant.

The weight of authority indicates that Toliver, as a party representing himself and hence functioning as an attorney, would be permitted to approach former but not current employees of defendant directly, outside any formal setting such as a deposition or judicial forum.[2] There is no indication that any instruction given by Judge Fox barred Toliver from contacting *former* employees of defendant.

### IV

■ Toliver argues that defendant could not properly utilize prior supervisory experience involving the population served by an agency in evaluating applicants for supervisory positions, because this is not listed as a requirement in any job description or other document. Prior experience in a specific activity would appear relevant to choice among applicants for work involving that function, although like other facially legitimate criteria it could be shown in proper circumstances to have been used as a pretext for illegal discrimination.

■ Even stray remarks can, depending on the circumstances, become important evidence of pretextual conduct. See *Ostrowski v. Atlantic Mutual Insurance Companies*, 968 F.2d 171, 182 (2d Cir.1992); see also *Kirschner v. Office of the Comptroller*, 973 F.2d 88 (2d Cir.1992). No indicia of pretext has been presented with respect to defendant's consideration of specific supervisory experience involving the target population in selecting supervisors.

■ It is not a violation of Title VII for an employer to utilize an undocumented criterion not described on paper in choosing the best applicant to fill a job, especially a supervisory position. Subjective evaluation can also be part of a selection process without for that reason violating the statute, but cannot

---

1. See *United States v. Zafiro*, 945 F.2d 881 (7th Cir.1991), *aff'd* — U.S. ——, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).

2. See generally *Du Bois v. Gradco Systems*, 136 F.R.D. 341 (D.Conn.1991); *Action Air Freight v. Pilot Air Freight*, 769 F.Supp. 899 (E.D.Pa.1991); *Hanntz v. Shiley*, 766 F.Supp. 258 (D.N.J.1991); *Curley v. Cumberland Farms*, 134 F.R.D. 77

(D.N.J.1991); *Public Service Electric & Gas Co. v. Associated Electric*, 745 F.Supp. 1037 (D.N.J. 1991); *Valassis v. Samelson*, 143 F.R.D. 118 (E.D.Mich.1992); *Shearson Lehman Bros. v. Wasatch Bank*, 139 F.R.D. 412 (D.Utah 1991); *Doe v. Eli Lilly & Co.*, 99 F.R.D. 126 (D.D.C.1983); *Niesig v. Team I*, 76 N.Y.2d 363, 558 N.E.2d 1030, 559 N.Y.S.2d 493 (1990).

be allowed to become a pretext for illegal discrimination based on race or other forbidden criteria. See *Watson v. Ft. Worth Bank & Trust Co.*, 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988); Mertens, "Watson v. Fort Worth Bank & Trust," 14 Employee Rel.L.J. No. 2 at 163 (Fall 1988). Were the contrary the rule, 42 USC § 2000–e and Title VII would become a collective straitjacket requiring extensive paperwork to justify otherwise proper employment decisions; there is no indication that this was the intent of Congress.

## V

In other respects, Toliver's application for reconsideration restates his original contentions, somewhat altered to meet the conclusions drawn in my memorandum order of February 1, 1993. Based on the submissions of both parties which I considered on February 1, 1993, the background facts are undisputed. While Toliver had an opportunity to submit further information—his time to move for reconsideration was intended in light of his *pro se* status—he has not enhanced his position by restating facts already established. See *Military Services Realty v. Realty Consultants*, 823 F.2d 829, 832 (4th Cir. 1987). Toliver's original submissions which I relied upon in my February 1, 1993 memorandum order are thus as relevant now as then. See *Bellino v. Schlumberger Technologies*, 944 F.2d 26, 33 (1st Cir.1991).

## VI

■ In considering the case as a whole, I am left with the clear conviction that no genuine issue of material fact is presented. It is undisputed that Toliver did not want to work full time, and obtained a dispensation to work part time which was in effect for a limited period. He then became involved in a dispute over use of sick leave. Toliver claimed illnesses excusing his presence at work without having sought medical advice.

Even if the employer acted unwisely or erroneously, there is no indication that this dispute was manufactured as a pretext to dismiss Toliver because of his race after having retained him on the workforce for some time previously. Once Toliver was dismissed for what the employer considered sound (whether or not in fact erroneous) nonracial reasons, it not plausible [3] that shortly thereafter the same employer would rehire him as a supervisor.

## VII

■ Toliver's application for reconsideration ploughs broader ground. It is apparent that he sincerely believes that current efforts to overcome the heritage of discrimination are to a large extent mere "window dressing" (Toliver's application at 7). It would be easy to ignore this protest and decide this case on purely statutory grounds, but that would be to fail to confront Toliver's application in its full scope.

■ Antidiscrimination statutes can successfully preclude much discrimination based on forbidden criteria including race, but do not, in and of themselves, provide new opportunities necessary to overcome the drag created by past injustices. How the challenge of overcoming the residue of past injustices can best be met is a matter for the political branches and the public to decide; major efforts have been made at various times to deal with this critical subject.[4] Perhaps the Second World War was the Nation's most expansive affirmative action program, because everyone was needed—a reality setting the stage for the recommendations which ultimately led to the enactment of Title VII in 1964.[5] While the judiciary cannot meet this challenge or insure its resolution in a way satisfactory to Toliver or any other citizen, our Constitution and the judicial branch do protect the right of access to the political

---

**3.** Where a claim is "implausible," the claimant "must come forward with more persuasive evidence ... than would otherwise be necessary." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**4.** See L. Sullivan, *Build Brother Build* (1969) (highly successful program in which jobs as part of the Apollo Project were guaranteed if necessary training was satisfactorily completed).

**5.** See President's Committee on Civil Rights, *To Secure These Rights* (1947).

process where efforts to eliminate the drag-weight of the past can be creatively pursued.[6]

Construing Title VII to permit suits under it where there is no genuine issue concerning facts from which one could reasonably infer discrimination on forbidden grounds would, however, retard rather than promote the objectives of the statute.

SO ORDERED.

---

6. Thus the Voting Rights Act (42 USC § 1971 *et seq.*) and those constitutional principles which protect freedom of conscience and expression provide opportunities to seek to deal with the concerns reflected in Toliver's submission, albeit without assuring success in such efforts. See *United States v. Carolene Products Co.*, 304 U.S. 144, 152–53 n. 4, 58 S.Ct. 778, 783–84 n. 4, 82 L.Ed. 1234 (1938); Powell, "Carolene Products Revisited," 82 Colum.L.Rev. 1087 (1982).