EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

UNITED STATES STEEL CORPORATION, Defendant.

Civ. A. No. 84–702.

United States District Court, W.D. Pennsylvania.

Oct. 1, 1987.

Spencer H. Lewis, Jr., Reginald Sydnor, Carmen R. Matos, E.E.O.C., Philadelphia, Pa., for E.E.O.C.

Richard J. Antonelli, USX Pittsburgh, Pa., for U.S. Steel.

Theresa Homisak, Pittsburgh, Pa., for Pennsylvania Human Relations Com'n.

## ORDER

BLOCH, District Judge.

AND NOW, this 1st day of October 1987, after the plaintiff, Equal Employment Opportunity Commission, filed an action in the above-captioned case, and after the defendant filed a motion for summary judgment and the plaintiff filed a motion for partial summary judgment, and after the Report and Recommendation was filed by the United States Magistrate, and the parties were granted ten days in which to file objections thereto, and upon consideration of the objections filed by the defendant which in essence concur in the Report and Recommendation, and the reply to the objections filed by the plaintiff which concur in the Report and Recommendation, and upon independent review of the pleadings, and the Magistrate's Report and Recommendation, and the findings of fact and conclusions of law stated therein as required by Rule 52(a), F.R.Civ.P, which is adopted as the opinion of this Court,

IT IS ORDERED that the defendant United States Steel, its officers, agents, employees and all other persons acting in concert with them or on their behalf, are permanently enjoined from terminating or reclassifying the 70/80 retirement pension with respect to any individual who has filed a charge or claim under the ADEA with the EEOC or in judicial proceedings or on whose behalf such a charge or claim has been filed, or who has assisted, participated, or cooperated in the EEOC's investigation and prosecution of charges or claims under the ADEA.

IT IS FURTHER ORDERED that the defendant United States Steel, its officers, agents, employees, and all other persons acting in concert with them or on their behalf are permanently enjoined from requiring employees to sign Form PF–116–B or PF–116–C in order to be eligible for a 70/80 retirement under mutually satisfactory conditions.

AND IT IS FURTHER ORDERED that the defendant United States Steel, its officers, agents, employees and all other per-

sons acting in concert with them or on their behalf are enjoined from the continued withholding of pension benefits of individuals whose 70/80 retirement has been terminated or reclassified because they filed or permitted to be filed on their behalf a charge or claim under the ADEA or counselled or assisted in the prosecution of such claims on their behalf or on the behalf of others, and that United States Steel remit to such individuals pension benefits withheld as a result of such classification or termination in amounts to be established in further proceedings.

## MAGISTRATE'S REPORT AND RECOMMENDATION

ROBERT C. MITCHELL, United States Magistrate.

### I. *Recommendation*

It is respectfully recommended that EEOC and plaintiff intervenor Pennsylvania Human Relations Commission's motion for partial summary judgment be granted and that defendant United States Steel's motion for summary judgment be denied.

It is further recommended that the defendant United States Steel, its officers, agents, employees and all other persons acting in concert with them or on their behalf, be permanently enjoined from terminating or reclassifying the 70/80 retirement pension with respect to any individual who has filed a charge or claim under the ADEA with the EEOC or in judicial proceedings or on whose behalf such a charge or claim has been filed, or who has assisted, participated, or cooperated in the EEOC's investigation and prosecution of charges or claims under the ADEA.

It is further recommended that the defendant United States Steel, its officers, agents, employees, and all other persons acting in concert with them or on their behalf be permanently enjoined from requiring employees to sign Form PF–116–B or PF–116–C in order to be eligible for a 70/80 retirement under mutually satisfactory conditions.

It is further recommended that the defendant United States Steel, its officers,

agents, employees and all other persons acting in concert with them or on their behalf be enjoined from the continued withholding of pension benefits of individuals whose 70/80 retirement has been terminated or reclassified because they filed or permitted to be filed on their behalf a charge or claim under the ADEA or counselled or assisted in the prosecution of such claims on their behalf or on the behalf of others, and that United States Steel remit to such individuals pension benefits withheld as a result of such classification or termination in amounts to be established in further proceedings.

### II. *Report*

Plaintiff Equal Employment Opportunity Commission ("EEOC") has brought this action against the United States Steel Corporation ("USS") alleging that USS was and is engaging in employment practices that violate section 4(d) of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(d), by requiring certain employees to sign a release of rights under the ADEA in order to obtain a pension plan known as a 70/80 retirement under mutually satisfactory conditions. The EEOC is authorized to bring this action pursuant to § 7(b) of the ADEA, 29 U.S.C. § 626(b), and §§ 16 and 17 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216 and 217. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1337, 1343, and 1345. Presently before the Court for disposition are EEOC and plaintiff intervenor Pennsylvania Human Relations Commission's motions for partial summary judgment and USS's motion for summary judgment.

#### A. *Factual and Procedural Background*

USS's 70/80 retirment is one of several pension plans available to USS employees who are participants in the United States Steel Corporation Plan for Employee Pension Benefits (Revision of 1950) (the "Plan"). Essentially the 70/80 is a special early retirement pension that provides more lucrative benefits to a retiring employee than do the standard retirement

plans available to participants.[1] To be eligible for a 70/80 retirement, an employee must meet certain age and service requirements [2] and fall into one of several specified categories, including the one involved here "under mutually satisfactory conditions." According to the Plan's governing rules, a 70/80 retirement under mutually satisfactory conditions is granted to an employee "who considers that it would be in his interest to retire and his Employing Company considers that such retirement would likewise be in its interest and it approves an application for retirement under mutually satisfactory conditions." United States Steel 1980 Non-Contributory Pension Rules, section 2.6(a)(4) (Exhibit A to the Affidavit of C.E. Magistri attached to USS's Motion for Summary Judgment). Unlike most of the pension plans available to eligible participants, a retiring employee may not unilaterally compel USS to grant 70/80 retirement under mutually satisfactory conditions. Rather, the grant of this pension is within the sole discretion of the company, which must approve an application for the pension. According to USS, the plan has been historically granted to management employees whose jobs have been eliminated in USS's long efforts to reduce management work forces in order to deal with the business conditions that have afflicted the declining American steel industry. An application for the plan is typically granted where both USS and the employee are satisfied with the circumstances surrounding the early retirement. Hence the mutuality of the plan—the company benefits by reason of the employee's hassle-free early departure and the employee benefits by receiving an early and more lucrative pension plan than he would otherwise have been entitled to receive.

In the late 1970's and early 1980's, the management at USS discovered that certain employees who had been granted the 70/80 retirement under mutually satisfactory conditions had subsequently filed age discrimination charges against USS claiming that their termination had been improper. The management at USS felt that this defeated the very purpose of the 70/80 since this special pension plan was supposedly granted to employees who were satisfied with the expanded conditions of their retirement from the company and who had tacitly agreed that by applying for the 70/80 and retiring early, they would not bring legal action concerning their retirement from the company. This development led the USS management to develop a proposal requiring all employees requesting a 70/80 retirement under mutually satisfactory conditions to release all claims against USS related to their employment and termination. This proposal was adopted by the Special Committee of the USS Board of Directors, which determined that effective October 1, 1982 all management employees of USS who desired the 70/80 retirement would be required sign a general release known as Form PF–116–B.

Form PF–116–B, entitled "Application and Release for 70/80 Retirement Under Mutually Satisfactory Conditions," contains a release or waiver of all claims and causes of action under, *inter alia*, the ADEA.[3] The Form also sets forth a promise by the employee/signatory (1) not to file or permit to be filed on his or her behalf any claim under the ADEA; (2) not to counsel or assist in the prosecution of such claim whether on his behalf or on the behalf of others; and (3) to withdraw any such claim filed by the employee/signatory or by others on his or her behalf and to not participate in such claim. The form also pro-

---

1. USS has estimated that the present value of a 70/80 retirement in the case of a 55 year old employee is $109,000 (Magistri Affidavit ¶ 6).

2. An employee must have at least 15 years of continuous service, be under 62 years of age, and either have attained the age of 55 years and have a combined age and years of continued service equal to 70 or more or have a combined age and years of continuous service equal to 80 or more.

3. The form also contains a waiver and release of rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, as well as under all state and federal causes of action relating to the conditions of the employee's termination. However, these provisions are not challenged in the instant action, and the subsequent discussion will be limited to the applicability of the form to the ADEA.

vides for certain penalties against individuals who breach their obligations under the release, including repayment of any benefits received plus interest and a conversion of the employee's retirement from the 70/80 to the less desirable standard retirement plan. Prior to October 1, 1982, the release and waiver contained in Form PF–116–B were not required in order to obtain a 70/80 retirement pension.

The EEOC commenced the instant action on March 3, 1984 alleging that USS was and is willfully engaging in employment practices that violate the ADEA by requiring employees to sign the PF–116–B in order to obtain a 70/80 retirement. The complaint further alleged that use of the release would have the effect of "precluding, discouraging and intimidating employees or former employees from filing charges, testifying, assisting or participating in any manner in an investigation, proceeding or litigation under the ADEA or in any manner opposing any practice made unlawful by the ADEA" and that it further would "prevent or hinder the [EEOC] from accomplishing its Congressional mandate of investigating and/or prosecuting alleged acts of discrimination." (Complaint ¶ 8). The complaint seeks a permanent injunction to enjoin USS from requiring employees to sign Form PF–116–B in order to be eligible for a 70/80 retirement; from denying benefits under the 70/80 to employees who have filed a charge, testified, assisted or participated in any manner in an investigation, proceeding or litigation under the ADEA; and from reclassifying the pensions of those individuals who have opposed practices made unlawful by the ADEA or filed a charge. (Complaint Prayer for Relief ¶ B). The complaint also seeks a judgment against USS under which USS would be required to pay appropriate back wages in the amount of the withheld pension benefits and an equal sum as liquidated damages to those persons whose 70/80 pensions have been reclassified because of their actions. Finally, the complaint seeks to enjoin USS from continuing to withhold amounts owing to these individuals. (Complaint Prayer for Relief ¶¶ C and D).

Simultaneously with filing the complaint, the EEOC requested a Temporary Restraining Order, contending that USS's use and enforcement of the release was causing irreparable harm to the EEOC's investigative and administrative processes. Based upon the motion, an evidentiary hearing, and the briefs and arguments of the parties, the Court on March 28, 1984 issued a TRO restraining USS from enforcing certain portions of the release and also restraining USS from terminating the 70/80 retirement with respect to certain individuals who filed charges or claims under the ADEA or who participated in the EEOC's investigation of charges or claims under the ADEA (Docket entry 7).

A hearing on the EEOC's motion for a preliminary injunction was held on April 4, 1984 at which several individuals who had signed the PF–116–B testified. The Court found that a number of those individuals had filed charges with the EEOC concerning their layoffs or retirements before they were required to sign the PF–116–B. One of these individuals had also filed an action in federal district court. The Court further found, however, that some individuals had not filed any charges nor joined any lawsuits at the time they signed the PF–116–B. The Court also found that only with respect to one individual did the evidence suggest that execution of the PF–116–B was part of a settlement or compromise of a claim. In reviewing the circumstances under which the individuals were given the PF–116–B to sign, the Court concluded that "[i]n light of all the factors discussed above, namely, lack of negotiations, absence of counsel, lack of explanation with respect to the release and the ambiguity in the language of the release, we hold that the employees' consents to the alleged "settlements" were not voluntary and knowing even assuming that the facts could support the existence of "settlements." Opinion at 8 (docket entry 10) Finally, the Court found that the use and enforcement of PF–116–B would cause irreparable harm to the EEOC in that the use of PF–116–B has and would continue to hinder and impede "EEOC's investigative and administrative processes

by having a 'chilling' effect on those who have filed charges as well as on those who have not and will continue to do so ..." Opinion at 9. Accordingly, the Court granted the EEOC's motion for a preliminary injunction by Order of April 6, 1984 (docket entry 10).

Effective June 1, 1984, subsequent to the commencement of this action, USS replaced Form PF–116–B with Form PF–116–C. Like the PF–116–B, the PF–116–C is a prerequisite to obtaining a 70/80 retirement under mutually satisfactorily conditions and contains a release and waiver by the signatory of all claims under the ADEA as well as promises by the signatory not to file or permit to be filed any claim on his behalf, to voluntarily withdraw any such claim already filed, and to not participate in such claim. Unlike the PF–116–B, however, the new form does not contain a promise by the signatory not to counsel or assist in the prosecution of any claim. The PF–116–C also provides that the applicant may revoke his application at any time during a thirty day period following the date he signs the application. The new form also has an attachment that provides an explanation of available pension benefits, including an explanation of the conditions attached to the 70/80 retirement under mutually satisfactory conditions. Both the PF–116–C and the attachment contain in boldfaced type a statement that by signing the form the retiree waives certain legal rights and that an employee who does not understand the issues involved is free to consult an attorney. USS has notified the Court that it developed the PF–116–C in order to address certain of the problems raised by the EEOC in this action and that although it is utilizing the PF–116–C, it recognizes that the provisions of the pre-

liminary injunction apply to the PF–116–C as well as the PF–116–B.

The EEOC and plaintiff-intervenor Pennsylvania Human Relations Commission have now filed a motion for partial summary judgment seeking judgment on the issue of liability and reserving the issue of damages for future proceedings.[4] USS has filed a cross motion for summary judgment. Summary judgment is appropriate where the pleadings and discovery material, together with any affidavits, show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R. Civ.P. 56(c); *Tigg v. Dow*, 822 F.2d 358 (3d Cir.1987). In support of its present motion, the EEOC relies primarily on the testimony and exhibits offered at the hearing held on its motion for a preliminary injunction, as well as on several depositions. In support of its motion and in opposition to EEOC's motion, USS has submitted several affidavits, discovery material, and other relevant documentary material. USS also relies on the testimony and exhibits offered at the preliminary injunction hearing.

### B. *Discussion*

It should be noted at the outset that the EEOC makes no claim of age discrimination in this case. That is, the EEOC is not contending, at least in this action, that USS unlawfully terminated the employees who signed the PF–116–B on the basis of age in violation of the central prohibitory section of the ADEA, § 4(a).[5] Rather, the central thrust of the EEOC's claim is that USS's use and enforcement of the PF–116–B and PF–116–C is in violation of the ADEA in that requiring employees to sign a waiver of rights under the ADEA in order to receive a 70/80 pension is impermissible, and further, that the additional provisions con-

---

**4.** In its motion for partial summary judgment the Pennsylvania Human Relations Commission relies on the briefs and arguments submitted by the EEOC, and has submitted no additional material.

**5.** § 4(a), 29 § 623(a), provides:

It shall be unlawful for an employer—(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or (3) to reduce the wage rate of any employee in order to comply with this chapter.

tained in these agreements deter individuals from filing charges or otherwise opposing practices made unlawful by the ADEA, as well as hindering the EEOC from performing its Congressionally mandated duty to enforce the provisions of the ADEA. Thus, the EEOC seeks no damages on any individual's behalf for age discrimination, but only to enjoin USS's future use of the PF–116–B/C as a prerequisite to obtaining a 70/80 pension and to have USS restore the 70/80's of these individual's whose pensions have been reclassified for violating the provisions of the forms. In order to resolve the EEOC's claim for relief, it would be appropriate, for purposes of clarity, to address separately the validity of each of the challenged provisions contained in the PF–116–B/C.

### 1. *Validity of the Release and Waiver of Rights under the ADEA*

In support of its challenge to the validity of requiring employees to sign a waiver and release of rights under the ADEA in order to be eligible for a 70/80 pension, the EEOC argues first, that waivers of rights under the ADEA are *per se* invalid because of the ADEA's incorporation of the enforcement provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.;* second, that the waivers in this case are inoperative as impermissible prospective waivers of rights; and finally, that the waivers in this case were not made in a knowing and involuntary manner. Despite the extensive arguments made by both parties on this issue, it is not necessary to address this issue in order to resolve the EEOC's claim for relief in this case.

Ordinarily, the issue of the validity of a waiver of rights under the ADEA arises where an individual, or the EEOC on behalf of an individual, brings an action alleging unlawful age discrimination by an employer, the employer raises a waiver of rights under the ADEA by the individual as a defense, and the individual, or EEOC, asserts that the waiver cannot serve as a bar to the age discrimination claim for one of several reasons. See, for example, *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66 (6th Cir.1982); *Runyan v. NCR Corp.,* 573 F.Supp. 1454 (S.D.Ohio 1983), *affirmed* 787 F.2d 1039 (6th Cir.1986) (en banc); *Campbell v. Connelie,* 542 F.Supp. 275 (N.D.N.Y.1982); *Karten v. New York University,* 464 F.Supp. 704 (S.D.N.Y. 1979). However, as discussed, the EEOC makes no claim of age discrimination in this case. The EEOC nevertheless has gone to great lengths to argue against the validity of the waivers, under the assumption that the waiver provision itself must be found invalid in order to enjoin the enforcement of the additional provisions. However, as will be discussed *infra,* these additional provisions are invalid and should be enjoined regardless of the validity of the waiver of rights itself. Therefore, it is unnecessary to resolve the issue of whether the waiver of rights under the ADEA is valid.

### 2. *Validity of the Counsel or Assist Provision*

■ As discussed, in addition to the waiver of rights provision, the PF–116–B contains a promise by the signatory not to "counsel or assist" in the prosecution of claims under the ADEA whether on their behalf or on the behalf of others. The EEOC maintains that this provision discourages signatories from testifying, assisting, or otherwise participating in any proceeding under the ADEA as well as hindering the EEOC from performing its obligation to enforce the ADEA. Indeed, at the hearing held on EEOC's motion for a preliminary injunction, evidence was presented that this provision had such a chilling effect. It is submitted, however, that this provision is *per se* invalid regardless of whether the EEOC can show that it has in fact had such a deterrent effect.

The EEOC contends that the provision at issue is in violation of § 4(d) of the ADEA, 29 U.S.C. § 623(d), which provides in pertinent part:

"It shall be unlawful for an employer to discriminate against any of his employees ... because such individual ... has opposed any practice made unlawful by this section, or because such individual ... has made a charge, testified, assist-

ed, or participated in any manner in an investigation, proceeding, or litigation under this chapter."

Certainly, reclassifying a retiree's pension for counseling or assisting in the prosecution of ADEA claims constitutes discrimination against an individual who has "opposed any practice made unlawful" by the ADEA or has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA]." Although it can be argued that a retiree is not an "employee" under § 4(d) in that he is no longer employed by the company when the retaliatory conduct occurs, the individual was such an employee when required to sign the PF–116–B and thus the seeds for subsequent retaliation were planted while the individual was employed by the company. Moreover, the practice challenged by the EEOC is USS's requirement that an employee sign the "counsel or assist" provision—an event that occurs at a time the individual is an employee. In any event, the "counsel or assist" provision is inconsistent with the apparent policy behind § 4(d), namely to allow aggrieved individuals to enforce the provisions of the ADEA without fear of reprisal or retaliation.

USS has maintained throughout this action that it did not intend for the "counsel or assist" provision to have such far reaching effects. Specifically, USS contends that under its interpretation, the PF–116–B does not preclude a signatory from talking to the EEOC or from testifying in court. However, as the Court noted in the Opinion of April 6, 1984, this language is not free from ambiguity, and it could be interpreted by a signatory as prohibiting him from giving any assistance to the EEOC. The mere possibility that this provision would deter individuals from participating in any ADEA claims is sufficient to render it violative of § 4(d) and public policy. See *Wolf v. J.I. Case Company*, 617 F.Supp. 858, 867–869 (E.D.Wis.1985) (discussing Title VII's nearly identical anti-retaliation provision).

In short, whether under the express provisions of § 4(d) or as contrary to public policy, the "counsel or assist" provision is invalid and USS should be enjoined from enforcing it. Even assuming that the waiver of rights requirement itself is valid, this provision goes further by potentially prohibiting signatories from participating in an ADEA claim in any manner even if the claim is brought on behalf of another individual. Even if this provision was entered into in a knowing and voluntary manner by an individual, USS would not actually be prejudiced by enjoining its enforcement since it would still be able to assert the waiver as a defense to any age discrimination brought by an individual or the EEOC. However, if this additional provision is permitted to stand, the individual might be deterred from even discussing his situation with the EEOC in the first instance for fear his pension would be reclassified. Thus, USS should be enjoined from using this provision in the future and from enforcing its terms against individuals who have already signed the form.

3. *Validity of the Charge or Claim Provision*

 Both the PF–116–B and PF–116–C contain a promise by the signatory not to file a charge or claim under the ADEA. In the typical situation where an individual makes a waiver or release of rights under some statutory or common law cause of action, an additional promise not to file a claim is essentially irrelevant. That is, no harm will accrue to the individual if he does assert such a claim although the defendant will certainly raise the waiver as a defense to that action. In the instant case, however, harm will accrue to the signatory merely by filing a charge with the EEOC, or an action in court, in that upon the filing of the charge or claim his pension will be immediately reclassified and any enhanced pension benefits received would have to be returned. Thus, this provision, as the counsel or assist provision, has the potential of deterring individuals from participating in ADEA claims. Again, it should be noted that USS may still assert a signatory's waiver of rights as a defense to an age discrimination claim. However, if an individual is deterred from bringing such an

action in the first instance, the validity of the waiver of rights will not be able to be determined. Thus, USS should be enjoined from enforcing this provision as well as the counsel or assist provision.

### 4. *Validity of the Withdrawal Provision*

The forms also contain a promise by the signatory to withdraw any ADEA claims already filed and to not participate in any claim already filed on his behalf. Apparently this provision is included because the forms are used as a condition for the 70/80 retirement in situations where a signatory has a pending charge or claim against USS. Thus, it is conceivable that the use of the form may be part of a valid settlement. Once again, however, USS may raise such a settlement as a defense to such a claim brought under the ADEA, and a determination of the validity of the settlement may be determined in that context. Further, as already discussed, it is *per se* invalid to prohibit a signatory from participating in any ADEA brought on his behalf. For these reasons, the provisions of any injunctive relief should apply to signatories who had claims or charges pending at the time they signed the forms as well as to those who brought such charges or claims subsequent to signing the forms.

### C. *Conclusion*

The EEOC has brought this action because of the actual and potential effect certain provisions contained in the PF–116–B and PF–116–C have in deterring individuals from filing charges or claims under the ADEA or otherwise participating in ADEA claims, which in turn hinders the EEOC's investigative and enforcement mandate. In order to enjoin the enforcement of these provisions, the EEOC has argued extensively against the validity of requiring a waiver of rights under the ADEA in order to receive a 70/80 retirement. However, the issue of the validity of the waiver should be appropriately decided where such waiver is raised as a defense to an age discrimination claim brought pursuant to the ADEA. Furthermore, for the reasons discussed, the relevant provisions are invalid as a matter of law and their enforcement should be enjoined regardless of the validity of the waiver itself. Since the invalid provisions cannot be severed from the remainder of the forms, it would therefore be appropriate to enjoin USS from in the future requiring employees to sign the forms as a prerequisite to obtaining a 70/80 retirement. Further, USS should be enjoined from terminating or reclassifying the 70/80 retirements of those who have violated the invalid provisions. USS should also be enjoined from the continued withholding of pension benefits of individuals who have violated the invalid provisions. Finally, USS should remit to these individuals benefits withheld as a result of the reclassification or termination in amounts to be established in further proceedings.

Accordingly, it is recommended that EEOC and plaintiff intervenor Pennsylvania Human Relations Commission's motion for partial summary judgment be granted and that defendant United States Steel's motion for summary judgment be denied. In addition, it is recommended that injunctive relief be granted.