Robert CHAMBERS, Plaintiff,

v.

CAPITAL CITIES/ABC, Defendant.

No. 93 Civ 6461 (VLB).

United States District Court,
S.D. New York.

Jan. 17, 1995.

John F. Carney, Carney & McKay, Pelham, NY, for plaintiff.

Kathleen M. McKenna, Proskauer Rose Goetz & Mendelsohn, New York City, for defendant.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

Plaintiff Robert Chambers in this age discrimination case has objected to two rulings by United States Magistrate Judge Mark D. Fox of November 17, 1994. The first order declined to authorize *ex parte* interviews by plaintiff's counsel of defendant Capital Cities/ABC ("Capital Cities" or "defendant") current employees.[1] Plaintiff argues that the result is to make it effectively impossible for plaintiff to secure relevant information.

In the second ruling to which plaintiff has objected the Magistrate Judge declined to authorize plaintiff's counsel to inform former employees of defendant that such employees could safely disregard agreements with Capital Cities not to disclose various types of information. Plaintiff contended, and the Magistrate Judge agreed, that such agreements may be contrary to public policy. The Magistrate Judge held, however, that it would be impermissible for plaintiff's counsel to advise the former employees concerning the validity of the agreements. The Magistrate Judge further noted that the full text of the agreements had not been provided. Plaintiff argues that these rulings leave him without recourse in attempting to obtain information from the former employees.

As in some prior discovery disputes, additional options beyond those directly at issue are available to deal effectively with the problems raised by the parties. Each of the rulings of the Magistrate Judge protect genuine interests of Capital Cities or the witnesses involved, while at the same time leaving open adequate avenues for plaintiff to secure needed information relevant to the case, as described below; plaintiff's objections accordingly are overruled.

Capital Cities for its part has objected to those rulings of the Magistrate Judge concerning alleged agreements between defendant and some former employees that they not reveal information about their employment with Capital Cities which might be harmful to the company in other disputes. Judge Fox's ruling in this respect, made exclusively in the context of the parties' discovery dispute, is a narrowly limited one which merely bars resort to such agreements so as to preclude effective discovery in this federal litigation. This ruling as part of supervision of discovery is well within the discretion of the Magistrate Judge under 28 U.S.C. § 636. Defendant's objection to Judge Fox's ruling as so construed is accordingly also overruled.

### II

The subject of when attorneys may conduct *ex parte* interviews of an opposing party's employees is governed by both DR 7–104(A) and Fed.R.Civ.P. 26(c), which concerns protective orders in connection with discovery. Unsupervised *ex parte* interviews conducted by adversary counsel with current employees are likely to produce employer-employee distrust with unfavorable implications for the employee as well as difficulties in determining whether genuinely confidential current information was revealed. On the other hand, *ex parte* interviews by adversary counsel with former employees do not incur or create such risks to the same extent.

---

1. For prior decisions in this case, see *Chambers v. Capital Cities/ABC*, 851 F.Supp. 543 (S.D.N.Y. 1994); *Chambers v. Capital Cities*, 154 F.R.D. 63 (S.D.N.Y.1994); *Chambers v. Capital Cities*, 157 F.R.D. 3 (S.D.N.Y.1994).

The complaint has been dismissed with respect to the individual defendants originally named in the caption and omitted here. *Chambers v. Capital Cities/ABC*, 851 F.Supp. 543 (S.D.N.Y.1994).

Courts which have wrestled with the issue have increasingly gravitated toward the position that current employees should not be interviewed by opposing counsel *ex parte*, but that former employees may be so interviewed.[2] Where *ex parte* interviews with current employees are permitted, only non-managerial personnel are usually allowed to be so interviewed. *Niesig v. Team I*, 76 N.Y.2d 363, 559 N.Y.S.2d 493, 558 N.E.2d 1030 (1990). Determining what employees are managerial, however, can be difficult, especially as industry increasingly recognizes the efficiency advantages in many instances of delegation of decisionmaking authority to the working level.[3]

Judge Fox's decisions to allow *ex parte* interviews with former employees of Capital Cities but restrict significantly such interviews with current employees are well within the discretion of the Magistrate Judge under current authority on the subject and under 28 U.S.C. § 636. Judge Fox's ruling leaves open the right of either party to seek additional rulings in the event interviewing of current employees threatens to cause harm to Capital Cities, or if plaintiff is denied what is necessary to secure information needed in connection with the case.

More significantly, other means are available to secure relevant non-privileged information from current employees. Deposition discovery may be conducted with investigative as well as evidentiary purposes under Fed.R.Civ.P. 26; such discovery may be conducted with minimum expense if the deposing party makes it clear to the adversary and the witness that a transcript will be ordered only if significant evidence is developed. See *Bogan v. Northwestern Life Ins. Co.*, 152 F.R.D. 9 (S.D.N.Y.1993). Such discovery may offset the disadvantage of plaintiff's inability to conduct *ex parte* interviews with current employees of defendant, and indeed constitute a substitute for such interviews, especially since preparation of the witness for testimony is a legitimate area for questioning during the deposition.

■ As held by the Magistrate Judge, defense strategy in the litigation is an impermissible subject for exploration with current (or former) employees. Anything said to the witness during preparation for testimony and which would influence the witness' testimony is, however, a legitimate topic for exploration; it may also affect the inferences (favorable or unfavorable) to be drawn from the witness' answers. See *Intermedics v. Ventritex*, 139 F.R.D. 384 (N.D.Cal.1991); *Occulto v. Adamar, Inc.*, 125 F.R.D. 611 (D.N.J. 1989); *Murray International v. New York Telephone*, 1993 WL 82531 (S.D.N.Y.1993) and authorities cited. Permissibility of questioning concerning preparation is made all the more evident in the 1993 amendments to Fed.R.Civ.P. 26, which require fuller disclosure regarding experts and other witnesses than was ever required previously.

If counsel for an employer elects to provide information to a potential witness which the witness did not already know from other sources, counsel does so at peril, because of the risks of confusion within the witness' mind between what the witness observed personally and what was told or suggested to the witness.[4]

Plaintiff's argument in a letter to the court that defense counsel had made statements during an informal non-recorded discussion at a status conference is rejected. Were comments during such conferences to be binding on the parties, it would have a chilling effect on discussion of potential areas of agreement contrary to the objectives of Fed. R.Civ.P. 1 and Fed.R.Evid. 408. See *Chase Manhattan v. Celotex Corp.*, 830 F.Supp. 790 (S.D.N.Y.1993).

---

**2.** See generally *Valassis v. Samuelson*, 143 F.R.D. 118 (E.D.Mich.1992); *Shearson Lehman Bros v. Wasatch Bank*, 139 F.R.D. 412 (D.Utah 1991); *Action Air Fright v. Pilot Air Freight*, 769 F.Supp. 899 (E.D.Pa.1991); *Dubois Gradco Systems*, 136 F.R.D. 341 (D.Conn.1991); *Hanntz v. Shiley*, 766 F.Supp. 258 (D.N.J.1991); *Public Service Electric & Gas v. Associated Electric*, 745 F.Supp. 1037 (D.N.J.1990); *Niesig v. Team I*, 76 N.Y.2d 363, 559 N.Y.S.2d 493, 558 N.E.2d 1030 (1990).

**3.** See *Dollar Dry Dock Bank v. Denning*, 148 F.R.D. 124 (S.D.N.Y.1993).

**4.** See Wines, "Iran–Contra Witness Imperils North Case With New Responses," NY Times Sept. 12, 1991 at A1, B10.

## III

Legal responses to confidentiality agreements between employers and former employees are entirely dependent on the nature and subject matter of the agreement and the context in which the agreement is before the court. The Capital Cities—former employee agreements involved here are presented solely in the context of the extent to which such agreements may or may not be used in a manner precluding discovery procedures in this federal litigation. The court's authority over such discovery, as indicated by the authorities cited in part II above, includes as a subset supervision over pre-testimonial interviews in preparation for depositions, and disclosures of names of potential witnesses. No rulings are made or intended to be made here relating to the validity or invalidity of any agreements in other contexts.

■ Employer—employee relationships often involve conveyance of confidential information such as trade secrets which employees may agree not to disclose absent legal compulsion, see *Premix v. Zappilitelli,* 561 F.Supp. 269 (N.D.Ohio 1993), and may indeed be prohibited from revealing because of the relationship itself. See Fed.R.Civ.P. 26(c). The information protected must, however, be legitimately confidential. See Phillips, "The Concept of Reasonableness in Protection of Trade Secrets," 42 Business Lawyer 1045 (August 1987).

Employers entering into settlements with outgoing staff may wish to buy peace on a broader scale by obtaining an agreement that the former employee will not take steps to find others who may be discontented and thus foment additional lawsuits by others. The circumstances in which such restrictions on recruiting others to complain or sue may be permissible are not at issue here. Plaintiff's counsel, not former employees of defendant, seek to initiate the contact between plaintiff and the former employees involved here.

Instead, the question now raised relates to affirmative restrictions on providing information in the context of pre-deposition conversations or depositions where the former employee is not the initiating party. See *Silver Chrysler Plymouth v. Chrysler Motors,* 370 F.Supp. 581, 583 (E.D.N.Y.1973), *aff'd* 518 F.2d 751 (2d Cir.1975) (relating to attorney disqualification).

It has been recognized that at least in some circumstances, agreements obtained by employers requiring former employees to remain silent about underlying events leading up to disputes, or concerning potentially illegal practices when approached by others can be harmful to the public's ability to rein in improper behavior, and in some contexts ability of the United States to police violations of its laws. Absent possible extraordinary circumstances not involved here, it is against public policy for parties to agree not to reveal, at least in the limited contexts of depositions or pre-deposition interviews concerning litigation arising under federal law,[5] facts relating to alleged or potential violations of such law. See generally, e.g., *EEOC v. United States Steel Corp.,* 671 F.Supp. 351 (E.D.Pa.1987); *Wolf v. JI Case Co.,* 617 F.Supp. 858, 867–68 (E.D.Wis.1985); *McGrane v. Reader's Digest,* 822 F.Supp. 1044, 1052 (S.D.N.Y.1993). The court in *EEOC v. United States Steel* specifically pointed out that agreements restricting former employee revelation of events in the workplace which are not privileged but may involve violations of federal law have the effect of "hindering" implementation of the "Congressionally mandated duty to enforce the provisions" of federal statutes. 671 F.Supp. at 357.

■ Under basic standing rules, anyone significantly injured by allegedly improper behavior or threatened behavior ordinarily has standing to raise the issue insofar as that party is affected, although such standing does not necessarily create a right of action. *Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988); Kannan, *"Perkins v. Lukens Steel Company:* Fifty–Two and Counting," 22 Public Contract LJ # 3 at 463 (ABA Spring 1993).

---

5. See Fed.R.Evid. 501 (federal law applies to questions regarding privileges where federal law furnishes the underlying rule of decision on the merits).

■ Here, plaintiff would plainly be adversely affected by his inability to secure through depositions or pre-deposition interviews in connection with the present litigation, information relevant to his claim, whereas former employees paid for an agreement to keep silent might have little interest in challenging the agreement. No independent private right of action need be considered since the question arises in the course of routine judicial administration of discovery governed by the Federal Rules of Civil Procedure and supervision of pre-discovery interviewing which is part of such discovery. To the extent state-law based contracts interfere unreasonably with federal judicial proceedings under federal substantive law, they are preempted, see *Golden State Transit Corp v. City of Los Angeles,* 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989), although the application of such contracts beyond their application in connection with this litigation is not before the court. See also *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* — U.S. ——, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994) (disapproving routine acceptance of agreements calling for vacating judicial decisions unfavorable to the settling party as condition of settlement).

### IV

■ The response proposed by plaintiff and rejected by the Magistrate Judge would authorize plaintiff's counsel to tell former employees of defendant that they need not be concerned about any untoward consequences of violating any agreement to keep silent which they may have entered into with Capital Cities. The Magistrate Judge wisely refused to permit such a remedy, which would make plaintiff's counsel the decision-maker concerning what confidentiality requirements were related to genuine trade secrets or other legitimately privileged information, and which dealt with concealment of information relating to potential improprieties on the part of the employer. This cannot be countenanced.

To permit such assurances to be given would put legitimate as well as illegitimate confidentiality arrangements at risk. It would also put plaintiff's counsel in the position of making potentially overbroad commitments. Were plaintiff's counsel to make assurances which turned out to be incorrect, lawsuits by former employees against plaintiff or his counsel might also be generated.

### V

■ If applied to depositions or pre-deposition interviewing with respect to litigation under federal substantive law, agreements calling or appearing to call for silence concerning matters relevant to alleged legal violations, whether or not such agreements are sought to be enforced, inherently chill communication relevant to the litigation. Where conduct of a party tends to preclude availability of information relevant to a litigation and where no genuine basis for keeping that information confidential exists, a court or factfinder may infer that the information, if disclosed, would be contrary to the position of the party engaging in such conduct. See *Baxter v. Palmigiano,* 425 U.S. 308, 316–20, 96 S.Ct. 1551, 1557–59, 47 L.Ed.2d 810 (1976); *Interstate Circuit v. United States,* 306 U.S. 208, 225–26, 59 S.Ct. 467, 473–74, 83 L.Ed. 610 (1939); *Gray v. Great American Recreation Ass'n,* 970 F.2d 145, 146 (2d Cir. 1988); Fed.R.Civ.P. 37(c)(1) (as amended in 1993).

Such an adverse inference can be drawn against defendant in connection with trial or motion practice in this case, unless it notifies in writing all former employees whom plaintiff wishes to interview, that no unfavorable consequences for the employees will flow from such former employees revealing information to plaintiff's counsel dealing with the specific subjects of hiring, assignment and discharge policies of defendant or any of its affiliates under procedural safeguards outlined below.[6]

---

**6.** Information about affiliates given by former employees does not involve burdensome discovery requirements imposed on defendant, and may lead to admissible evidence under Fed.R.Civ.P. 26. For former discovery rulings in this case, some involving related issues, see *Chambers v. Capital Cities/ABC,* 154 F.R.D. 63 (S.D.N.Y. 1994); *Chambers v. Capital Cities/ABC,* 157 F.R.D. 3 (S.D.N.Y.1994).

This notification shall be effective to prevent fear of adverse consequences from precluding former employees of defendant from disclosing information not privileged and relevant to this lawsuit, but is not to be construed as the equivalent of granting plaintiff's attorney sole and complete control over the interviews and/or depositions of former employees.

Defendant's assurance to the former employees will authorize the employees to talk with plaintiff's counsel directly without fear of adverse consequences, while indicating that they are not required to do so. It may also—provided that defendants' representatives will not have previously interviewed the former employee *ex parte* directly or indirectly concerning this litigation—protect former employees as set forth above only—

(a) at a deposition (which may be initially recorded only by audiotape to the extent described in part II above), or

(b) if defense counsel is notified and able to attend on the understanding that defense counsel will function only as an observer and will not interfere with plaintiff's counsel's interview in any way by way of objections or otherwise without consent of plaintiffs' counsel.

To avoid an adverse inference, a notification by defendant of the kind described above, if defendant chooses to make such a notification, should be provided within a reasonable time to be agreed upon by the parties or if necessary determined by the court or referred to the Magistrate Judge as part of his supervision of discovery.[7] A copy of the communication and a list of those to whom sent should be provided to plaintiff and the court.

While defendant is not required to submit any such communication to the court or plaintiff's counsel in advance of distribution, doing so might permit defendant to evaluate

any comments or objections and minimize subsequent controversy concerning the adequacy of steps taken.[8]

SO ORDERED.

---

7. In order to evaluate the adequacy of any disclaimer sent to prospective witnesses by defendant, the full text of Capital Cities' confidentiality agreement with former employees should be provided to plaintiff's counsel and the court within the same time period, with a full explanation of the subject matter covered by any portions which may be redacted.

8. To avoid contentions concerning whether such communications were timely sent and were received, defendant may wish to consider permitting plaintiff's counsel to provide them to interviewees.