**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff

v.

**NUCLETRON CORPORATION,**
Defendant.

**Civil No. L–07–2644.**

United States District Court,
D. Maryland.

July 2, 2008.

Debra Michele Lawrence, Ronald Lynn Phillips, U.S. Equal Employment Opportunity Commission, Baltimore, MD, for Plaintiff.

Bruce S. Harrison, Eric Hemmendinger, Fiona W. Ong, Shawe and Rosenthal LLP, Baltimore, MD, for Defendant.

## MEMORANDUM

BENSON EVERETT LEGG, Chief Judge.

Now pending are two motions: (i) Defendant Nucletron Corporation's Motion to Dismiss or Motion for Partial Summary Judgment (Docket No. 5), and (ii) Plaintiff the Equal Employment Opportunity Commission's (the "EEOC") Motion for Partial Summary Judgment (Docket No. 7). On May 14, 2008, the Court held oral argument on the Motions. For the reasons that follow, the Court will, by separate order, DENY the EEOC's Motion, and GRANT in PART and DENY in PART Nucletron's Motion.

### I. Introduction

This is an employment discrimination case. The EEOC brings two separate claims against Nucletron. In the first claim, the EEOC alleges that Nucletron terminated its former employee, Peter Dove, because of his age in violation of the ADEA. In the second claim, the EEOC alleges that Nucletron retaliated against Dove and a class of employees similarly situated to Dove. Only the second claim is at issue in the present motions.

The EEOC bases its retaliation claim on two theories: (i) Nucletron's policy of conditioning the award of severance benefits upon the terminated employee's agreement not to file a discrimination charge or to participate in proceedings before the EEOC constitutes "facial retaliation," and (ii) Nucletron retaliated against Dove for engaging in a protected activity by denying him severance benefits. Nucletron has moved to dismiss the EEOC's retaliation claim, arguing that both theories fail as a matter of law. The EEOC, in turn, moved for partial summary judgment on its retaliation claim under the first theory, but not the second.

An employer can offer its employee additional severance benefits not already promised or owed in exchange for the employee's promise not to file a discrimination lawsuit, or for a waiver or release of his discrimination claims. An employee may not, however, waive his right to file a charge with the EEOC or to participate in an EEOC discrimination proceeding. Even if the employer offers a severance agreement with an invalid waiver, however, the employer only commits retaliation if it either (i) attempts to enforce the agreement against an employee who signed the agreement but nevertheless files or participates in an EEOC charge, or (ii) withholds benefits already promised or owed from an employee who refuses to sign the agreement.

Accordingly, the Court finds that the EEOC may succeed under its second theory but not its first. The Sixth Circuit has directly addressed and rejected the EEOC's first theory. *EEOC v. SunDance Rehab. Corp.,* 466 F.3d 490, 500–501 (6th Cir.2006). Similarly, the Court finds that the theory fails because the mere offer of an unenforceable severance agreement is not "discrimination" as defined by the anti-retaliation provisions of the employment statutes.

The EEOC's second theory may be viable, however. If Nucletron revoked benefits that were part of the severance package promised to all terminated employees because Dove refused to waive his rights, then the EEOC's retaliation claim would succeed. If, however, Nucletron offered Dove an additional payment not otherwise promised or owed, then EEOC's claim

would fail. The EEOC is entitled to discovery on this issue.

Finally, the Court will, in an order to be issued later in the case, partially grant the EEOC's request for injunctive relief. The Court finds that portions of the severance agreement violate the Older Workers' Benefit Protection Act (the "OWBPA"). Also, if Nucletron were to enforce the invalid provisions against the employees who signed the agreement, such an action would constitute retaliation. An injunction prohibiting Nucletron from enforcing the invalid portions of the severance agreement signed by its employees is therefore warranted.

## II. Background

Nucletron sets out its official policy regarding the provision of severance benefits in its employee handbook. The handbook states, "Nucletron Corp. provides severance pay to eligible employees whose employment is terminated for reasons which are not prejudicial to Nucletron Corp., as determined by Nucletron Corp. in its sole discretion." (Def.'s Mot. Ex. 5).[1]

From January 1, 2005 until November 14, 2007, Nucletron required its employees to sign a severance agreement upon their termination in order to receive severance benefits. The agreement demands that the employee waive his rights under several employment statutes, including the Age Discrimination in Employment Act (the "ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Equal Pay Act of 1963 (the "EPA"). The agreement also requires the employee to promise neither to file a charge relating to his employment with any federal agency nor to participate in any such action.[2] If an em-

---

1. The employee handbook also contains a disclaimer stating that "[p]olicies set forth in this handbook are guidelines only and are not intended to create a contract, nor are they to

be construed to constitute contractual obligations of any kind." (Def.'s Mot. Ex. 6).

2. The agreement states, in pertinent part:

ployee files or participates in such a charge, the agreement gives Nucletron the right to recover: (i) the severance payment, (ii) liquidated damages, and (iii) attorney's fees. In exchange for the release, Nucletron provided the employee a severance payment and a period of continued employment at a reduced work schedule.

In December of 2005, Nucletron informed Peter Dove, one of its employees, that it intended to terminate his employment. In March of 2006, Nucletron offered Dove its standard severance agreement.

Dove retained counsel, who wrote Nucletron claiming that Dove's termination constituted discrimination under the ADEA. The letter went on to state, however, that Dove would sign the severance agreement if Nucletron increased the severance payment. Dove and Nucletron subsequently corresponded but could not reach an agreement. As a result, Nucletron terminated Dove on March 10, 2006, and did not provide him severance benefits.

Subsequently, Dove filed a charge with the EEOC, claiming that Nucletron had terminated him because of his age in violation of the ADEA. The EEOC then filed this action on Dove's behalf.

Nucletron offered the severance agreement to eleven employees aside from Dove. Each of those employees signed the agreement and received severance benefits. As far as the Court can discern from the parties' briefs, none of the eleven employees has filed a charge with the EEOC or otherwise violated the agreement. In addition, since November 14, 2007, Nucletron has ceased offering terminated em-

ployees the severance agreement acknowledging that portions of the severance agreement, discussed below, are unenforceable.

## III. Standard of Review

### A. *Motion to Dismiss*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead plausible, not merely conceivable, facts in support of his claim. *See Bell Atlantic Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. The court must, however, "accept the factual allegations of the complaint as true and must view the complaint in the light most favorable to the plaintiff." *GE Inv. Private Placement Partners II v. Parker,* 247 F.3d 543, 548 (4th Cir.2001).

### B. *Summary Judgment*

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). A ma-

---

Employee further covenants that she/he will neither file, participate in, nor cause nor permit to be filed on his/her behalf ... any ... claims, grievances, complaints, or any charges with any ... federal, and/or local agency, concerning or relating to any dispute arising out of his/her employment relationship with [Nucletron], alleging ... unlawful employment discrimination ...
(Def.'s Mot. Ex. 1 at 3).

terial fact is one that may affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987).

When both parties file motions for summary judgment, the Court applies this same standard of review. *See McCready v. Standard Ins. Co.,* 417 F.Supp.2d 684, 695 (D.Md.2006) (citing *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991)). The Court considers each motion "separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir. 2003).

## IV. Analysis

Title VII, the ADEA, and the EPA each have nearly identical anti-retaliation provisions. The ADEA's anti-retaliation provision is representative and provides that "[i]t shall be unlawful for an employer to discriminate against any of his employees or applicants for employment ... because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d).

As stated above, the EEOC bases its retaliation claim on two theories: (i) Nucletron's policy of conditioning the receipt of severance benefits upon an agreement not to file a discrimination charge or to participate in proceedings before the EEOC constitutes "facial retaliation," and (ii) Nucletron retaliated against Dove by withholding severance benefits that were part of the severance package promised all terminated employees. The Court will address each in turn. The Court will then address the EEOC's request for equitable relief.

## A. "Facial Retaliation"

Both parties agree that the portion of the severance agreement that requires an employee to waive his right to file or to participate in an EEOC discrimination charge is unenforceable. Under the OWBPA, which amended the ADEA, such a right cannot be waived. *See* 29 U.S.C. § 626(f)(4); *see also EEOC v. Cosmair, Inc.,* 821 F.2d 1085, 1089–1090 (5th Cir. 1987) (decided prior to the enactment of the OWBPA, finding such waivers to be void as against public policy).[3] The parties nevertheless disagree as to whether the mere offer of an unenforceable severance agreement constitutes retaliation under Title VII, the ADEA, and the EPA. The Court finds that it does not.

The EEOC asserts that Nucletron's policy of conditioning the receipt of severance benefits on a waiver of the right to file a charge with the EEOC constitutes "facial retaliation." Under this theory, the employer need not have enforced the waiver agreement, nor must the employee have filed a claim with the EEOC. The EEOC argues that the mere offer of the severance agreement constitutes retaliation. The Court disagrees.

The Sixth Circuit addressed this issue in *EEOC v. SunDance.* The district court in

---

**3.** The OWBPA only applies to waivers involving EEOC charges alleging a violation of the ADEA. The reasoning of *Cosmair,* however, applies equally to EEOC charges under Title VII and the EPA. Accordingly, such waivers under any of the three statutes are likely void as against public policy.

*SunDance* held that an employer can be liable for retaliation "even before either party takes any action (engaging in protected activity or adverse employment action)," if it offers terminated employees a severance agreement that "authorizes the employer to take an adverse employment action once an employee does engage in some protected activity." *EEOC v. SunDance Rehab. Corp.*, 328 F.Supp.2d 826, 837 n. 8 (N.D.Ohio 2004) *rev'd* 466 F.3d 490 (6th Cir.2006). The Sixth Circuit reversed, holding that the mere offer of an unenforceable severance agreement does not constitute retaliation. *SunDance*, 466 F.3d at 501.

The EEOC, like the district court in *SunDance*, relies heavily on *EEOC v. Board of Governors*, 957 F.2d 424 (7th Cir.1992).[4] In *Board of Governors*, the Seventh Circuit stated that the employer, through a collective bargaining agreement, had established a "retaliatory policy." *Id.* at 431. The collective bargaining agreement in that case gave all employees a contractual right to an in-house grievance proceeding. *Id.* The employer could, however, terminate a grievance proceeding if the employee filed a parallel complaint in federal court or with the EEOC. *Id.*

As the Sixth Circuit explained in *SunDance*, however, *Board of Governors* is distinguishable. The legality of the policy in *Board of Governors* was before the Seventh Circuit because the employer had enforced it against employees who had filed charges with the EEOC. *SunDance*, 466 F.3d at 498. The *Board of Governors* Court did not state that the existence of the policy alone constituted retaliation. The Court merely held that when the employer enforced its policy against employees who had filed EEOC charges, the affected employees could prove their retaliation claims without producing evidence that the employer had acted with retaliatory animus. *Board of Governors*, 957 F.2d at 427–428.[5] The Seventh Circuit did not create a cause of action for employees who had not yet been denied a grievance proceeding.

The mere offer of the severance agreement is insufficient to constitute discrimination in the retaliation context. The term "discrimination" in the anti-retaliation provision of Title VII includes any action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). The mere offer of a severance agreement does not fit this definition.[6] As discussed below, the employ-

---

4. The EEOC correctly states that two district courts, in *EEOC v. Lockheed Martin*, 444 F.Supp.2d 414, 421 (D.Md.2006) and *EEOC v. United States Steel Corp.*, 671 F.Supp. 351, 358 (W.D.Pa.1987) *rev'd on other grounds*, 921 F.2d 489 (3d Cir.1990), like the district court in *SunDance*, held that the mere offer of an unenforceable severance agreement can constitute retaliation. Both cases, however, were decided before the Sixth Circuit issued its opinion in *SunDance*. In fact, the *Lockheed Martin* Court based its decision exclusively on the lower court's decision in *SunDance*.

5. The EEOC also cites *Connecticut Light & Power Co. v. Secretary of Labor*, 85 F.3d 89 (2d Cir.1996) to support its claim. In *Connecti-*

*cut Light*, the plaintiff was offered what the Second Circuit found to be a retaliatory settlement offer *after* the plaintiff had engaged in a protected activity. *Id.* at 91 (emphasis added). Accordingly, *Connecticut Light* is distinguishable. Neither Dove nor the employees who signed the severance agreement had engaged in protected activity when Nucletron offered the agreement.

6. The EEOC argues that several courts have held that an adverse action taken in anticipation of imminent protected activity can constitute retaliation. *See e.g. Beckel v. Wal–Mart Assocs., Inc.*, 301 F.3d 621, 624 (7th Cir. 2002); *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir.1993). The cases cited

er's action only reaches the level of retaliation if it denies severance benefits that are otherwise promised or owed or if the employer sues to enforce the agreement. The mere offer of the agreement, without more, is not adverse and therefore not "discrimination" under the statute.

The EEOC warns that the offer of the severance agreement may chill employees who sign the agreement from filing an informational charge with the EEOC or participating in an EEOC proceeding.[7] Although Mr. Dove refused to sign the agreement, other employees with a valid claim might not. The invalid portions of the severance agreement would be found unenforceable in court, but no employee who signs the agreement would spend the time and money to challenge the provisions, the EEOC argues.

█ The EEOC's policy arguments have some merit. The mere offer of the severance package, however, does not fit the definition of retaliation under Title VII, the ADEA, and the EPA. The statutes are clear. To have committed actionable retaliation, the employer must have taken a sufficiently adverse employment action.

In addition, employees who sign unenforceable severance agreements are not unprotected. First, the employee or the EEOC can bring an action under the OWBPA seeking a declaration that the

unenforceable provisions of Nucletron's severance agreement are void. Other courts in the Fourth Circuit have recognized such claims. *See, e.g., Krane v. Capital One Services Inc.*, 314 F.Supp.2d 589, 609 (E.D.Va.2004) ("[A]n employee can seek declaratory and injunctive relief for a violation of the OWBPA.").[8] Second, as stated below, the Court will issue an injunction prohibiting Nucletron from enforcing the invalid provisions of the severance agreement against any of the eleven employees who signed it. Finally, the OWBPA is clear and easy to understand. An employee who consults a lawyer will immediately learn that the invalid portions of the agreement are unenforceable.

### B. Prima Facie Case of Retaliation

█ The EEOC also claims that Nucletron retaliated against Dove by denying him severance benefits and that it can prove such a claim under the *McDonnell Douglas* "burden shifting framework." The EEOC argues that the severance benefits offered Dove in the severance agreement were part of the standard severance package promised or owed all terminated employees at Nucletron. Requiring Dove to relinquish his claims under the employment discrimination statutes in order to receive those benefits therefore constitutes retaliation, the EEOC argues. The Court agrees that this theory is viable and will

---

by the EEOC are distinguishable, however, because in each the employer took an adverse action, such as terminating the employee. For instance, in *Sauers*, a supervisor committed retaliation by firing an employee whom he believed would sue him. 1 F.3d at 1128. Because the Court finds that Nucletron's offer of the severance agreement was not an adverse action, the cases are inapposite.

7. The EEOC acknowledges that the employees who signed the agreement, having validly waived their right to bring a lawsuit or receive money damages from an action brought

on their behalf by the EEOC, would not have a financial interest in filing a charge with the EEOC. Nevertheless, the EEOC argues that it has an important interest in receiving "informational" complaints regarding alleged discrimination.

8. *But see EEOC v. Sara Lee Corp.*, 923 F.Supp. 994, 999 (W.D.Mich.1995) ("Plaintiff cannot maintain a claim based upon a failure to follow the requirements [of the OWBPA] nor can it seek an injunction to enjoin future use of non-complying waivers.").

allow the EEOC to develop it through discovery.

■ To make a *prima facie* case for retaliation, a plaintiff must produce evidence from which a reasonable jury could find that (i) he engaged in a protected activity; (ii) his employer took an adverse action against him, and (iii) that a causal connection existed between the protected activity and the asserted adverse action. *Honor v. Booz–Allen & Hamilton, Inc.,* 383 F.3d 180, 188 (4th Cir.2004). As stated above, in the context of a retaliation claim, an adverse employment action is any action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern,* 548 U.S. at 68, 126 S.Ct. 2405.

■ Whether the EEOC can prove its claim will turn on the factual issue of whether the severance payment that Nucletron denied Dove was an additional payment or an amount already promised or owed to terminated employees. As stated above, an employer may offer an additional severance payment in exchange for a release of any claims under the retaliation statutes and a promise not file suit against the employer. *See SunDance,* 466 F.3d at 502. An employer may not, however, withhold standard employee benefits because an employee has refused to waive his rights under the anti-discrimination statutes. *See Bernstein v. The St. Paul Cos., Inc.,* 134 F.Supp.2d 730, (D.Md.2001).

If the EEOC can prove that Nucletron provided the payment offered in the severance agreement as a matter of course to all terminated employees, then it can establish the second element of its claim. If, however, the severance payment is a benefit over and above what is promised employees generally, then the EEOC's retaliation claim will fail.

Under this analysis, it is irrelevant whether the severance agreement included a waiver of the right to file a charge with the EEOC or to participate in an EEOC proceeding. If the severance benefit offered was not otherwise promised or owed, then Nucletron took no retaliatory adverse action by refusing to provide it to Dove.

### C. Equitable Relief
#### 1. Injunctive Relief

■ As part of their requested relief, the EEOC seeks a permanent injunction prohibiting Nucletron from attempting to enforce the invalid portions of the severance agreement against the eleven employees who signed it. As explained above, the invalid provisions violate the OWBPA, as they prohibit the employees from filing or participating in an EEOC charge. In addition, as defense counsel conceded at oral argument, if Nucletron were to bring a breach of contract suit against an employee who signed the severance agreement but nevertheless filed a charge with the EEOC, such an action would constitute retaliation.

■ A court may only issue an injunction if the plaintiff can show a "real or immediate threat of irreparable injury." *Simmons v. Poe,* 47 F.3d 1370, 1383 (4th Cir.1995). Nucletron represents that they will not seek to enforce the invalid provisions of the eleven severance agreements. There is nothing to prevent them, however, from changing their position at a later date. Accordingly, the Court finds that an injunction is appropriate.

The Court will issue the final injunction order later in the case.[9] As the time approaches, the Court will request that counsel jointly submit a proposed order with

9. The EEOC has not requested a preliminary injunction.

language consistent with the Court's ruling but acceptable to both sides.

### 2. Equitable Tolling

The EEOC also asks that the Court toll the charge-filing limitations period applicable to the employees who signed the severance agreement. Equitable tolling, however, may only be granted if the Defendant actively misled its employees, and the employees "reasonably relied on the misrepresentation by neglecting to file a timely charge." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir.1987). Accordingly, the Court cannot toll the limitations period unless and until the EEOC provides evidence of an employee who wishes to file a claim but did not do so within the time allotted because he reasonably relied on the severance agreement.

## V. Conclusion

For the foregoing reasons, the Court will, by separate order, DENY the EEOC's Motion (Docket No. 7) and GRANT in PART and DENY in PART Nucletron's Motion (Docket No. 5).

### *ORDER*

Now pending are two motions: (i) Defendant Nucletron Corporation's Motion to Dismiss or Motion for Partial Summary Judgment, and (ii) Plaintiff the Equal Employment Opportunity Commission's (the "EEOC") Motion for Partial Summary Judgment. On May 14, 2008, the Court held oral argument on the Motions. For the reasons stated in the Memorandum of even date, the Court hereby:

(i) DENIES the EEOC's Motion (Docket No. 7);

(ii) GRANTS in PART and DENIES in PART Nucletron's Motion (Docket No. 5); and

(iii) DIRECTS Nucletron to file an Answer on or before July 16, 2008; once the Answer is filed, the Court will issue a Scheduling Order.